UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HIATT ENTERPRISES, on its own behalf and on behalf of other similarly situated entities, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CAUSE NO. 1:06-cv-1110-WTL-LJM ) |
| IKON OFFICE SOLUTIONS, INC., | ) ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendant's motion for summary judgment. The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion to the extent and for the reasons set forth below.

Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that the entry of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). The court "is not required to scour the record in search of evidence to defeat the motion"; rather, the non-moving party must identify with reasonable particularity the evidence upon which it relies. *Id.* In other words, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must

affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.*

## Factual Background

The facts of record, viewed in the light most favorable to Plaintiff Hiatt Enterprises ("Hiatt"), are as follow. Hiatt is a printing and copying business located in Muncie, Indiana. In January 2000, Hiatt and Defendant Ikon Office Solutions, Inc. ("IKON") entered into two agreements, each entitled Equipment Maintenance & Supplies Agreement, pursuant to which Ikon was to service, maintain and supply three color copy machines that were owned by Hiatt. Shortly thereafter, one of Hiatt's copiers became inoperable; on IKON's recommendation, Hiatt entered into a five-year lease of a copier with IOS Capital ("IOS"), a wholly-owned captive finance subsidiary of IKON, to replace the inoperable copier. On July 18, 2000, Hiatt and IOS executed an agreement entitled Copy Management Plus Agreement ("Equipment Agreement") which governed the lease of the copier. On the same date, Hiatt entered into a new Equipment Maintenance & Supplies Agreement with IKON ("Maintenance Agreement"), pursuant to which IKON was to service, maintain and supply the leased copier and the two remaining operable copiers owned by Hiatt. Pursuant to the Equipment Agreement, Hiatt made monthly payments to IOS; approximately 20% of each of those payments was for the lease of the copier, and the remainder was for the maintenance of all three copiers.[1] The Maintenance Agreement with

---

[1] The Equipment Agreement called for minimum monthly payment of $3490.37 to IOS for 18,900 "guaranteed minimum monthly copies," with additional copies to be charged at $0.15 per copy. Hiatt's credit application relating to the Equipment Agreement, Ex. C to Affidavit of Christopher Hiatt, indicates that of the $3490.37 payment, $660.00 was for equipment and $2830.37 was for "service." The Equipment Agreement further provided that IOS was not responsible for any "maintenance and support" activities; rather, those were the responsibility of IKON pursuant to the separate agreement with IKON.

IKON called for payment of $0.06 "[f]or all B&W copies" to be billed semi-annually. There is no evidence that Hiatt made any payments pursuant to the Maintenance Agreement.

IKON failed to maintain either the leased copier or Hiatt's own copiers properly, resulting in periods of time when the copiers were inoperable. At one point, IKON gave Hiatt a credit of $7,761.75 to compensate for the periods of downtime. The problems continued, however, and in late summer 2002 Hiatt notified IKON and IOS that it was terminating both Agreements and returning the leased copier. Hiatt subsequently paid another company to repair one of its copiers that IKON had failed to repair and also purchased a copier to replace the leased copier.

## Discussion

In its third amended complaint against IKON,[2] Hiatt asserts several claims. Count I is a breach of contract claim in which Hiatt alleges that IKON breached the Equipment Agreement and the Maintenance Agreement by failing to maintain the copiers properly. Hiatt asserts that "IKON cause Hiatt to be overcharged by at least $12,600.50 in monthly base lease and maintenance billings" and that Hiatt also incurred substantial consequential damages due to the periods of time that the copiers were inoperable. IKON correctly notes that it is not a party to

---

[2]This case has its origins in a collection action filed in state court by IOS against Hiatt to recover under the Equipment Agreement. Hiatt subsequently filed a third-party complaint against IKON. After IOS settled its claim against Hiatt, leaving only Hiatt's third-party complaint against IKON, Hiatt amended that complaint to assert claims on behalf of an undefined putative class. The state court dismissed the amended complaint but granted Hiatt leave to amend, which it did, this time defining the putative class. Based upon the proposed class definition, IKON determined that the requirements for federal jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d))(A), were satisfied, and promptly removed the case to this court. Hiatt subsequently amended its complaint once again. Hiatt has not moved for class certification, and therefore only its individual claims are before the Court at this time.

the Equipment Agreement; rather, that contract was between Hiatt and IOS. Therefore, IKON argues, it cannot be liable for any alleged breach of the Equipment Agreement. Hiatt offers no response to that argument, other than to say that "It is not necessary, for purposes of defeating IKON's motion for summary judgment, for Hiatt to rebut that argument [because] IKON's breach of the [Maintenance Agreement] entitles Hiatt to relief." Hiatt's Brief at 4. Accordingly, IKON is entitled to summary judgment on Hiatt's breach of contract claim based upon the Equipment Agreement.

Turning to Hiatt's allegation that IKON breached the Maintenance Agreement, Hiatt has submitted evidence, in the form of the affidavit of Christopher Hiatt, that IKON failed to maintain the three copiers properly. IKON does not submit any evidence to refute this allegation, but rather argues that any payments that Hiatt made for maintenance services were made to IOS pursuant to the Equipment Agreement, to which IKON was not a party. However, IKON's obligation to maintain the copy machines was established by the Maintenance Agreement, not the Equipment Agreement; indeed, the Equipment Agreement expressly provides: "If you have contracted for maintenance and support activities from IKON, IKON alone is responsible for all of those services. IKON and IOS Capital are not agents for one another." Thus, if IKON failed to provide adequate maintenance services–and at this point the uncontroverted evidence of record is that it did–then IKON breached the Maintenance Agreement. IKON articulates no reason why the Maintenance Agreement is not enforceable, other than to state that Hiatt made its payments to IOS. However, as noted in footnote 1 above, there is evidence that a large portion of the payments made to IOS were for "service" which, according to the Equipment Agreement, were the responsibility of IKON. Regardless of whether

the payments for that "service" were made directly to IKON or through IOS, there is evidence to support Hiatt's contention that the payments were made and that IKON did not provide the service that it was obligated to provide. IKON therefore is not entitled to summary judgment on Hiatt's claim for breach of the maintenance agreement.

However, IKON is entitled to summary judgment with regard to Hiatt's claim for consequential damages, as the Maintenance Agreement clearly disclaims IKON's liability for such damages. Such contract provisions are not per se unenforceable under Indiana law.

> Indiana, likewise, recognizes exculpatory clauses. Parties are permitted to make such contracts so long as they are knowingly and willingly made and free from fraud. No public policy exists to prevent such contracts. However, exceptions exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public.

*General Bargain Center v. American Alarm Co., Inc.*, 430 N.E.2d 407, 411-12 (Ind. App. 1982).

Hiatt argues that the clause contained in the Maintenance Agreement is unconscionable. However, the following is its argument on that issue, in its entirety:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, but limitation of damages where the loss is commercial is not. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning*, 746 N.E.2d 941, 946 (Ind. 2001). Some district courts within the Seventh Circuit have awarded consequential damages, when a remedy failed of its essential purpose, in the face of prohibitions in the contract against consequential damages. *See, e.g.*, *Koehring Company v. A. P. I., Incorporated*, 369 F. Supp. 882 (E.D. Mich.1974)[3]; *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F. Supp. 39 (N.D. Ill. 1970 ).
>
> Unconscionability is a question of law determined on the basis of circumstances

---

[3]The Court notes that the Eastern District of Michigan is not within the Seventh Circuit.

>existing at the time the contract was made. *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1086 (Ind. 1993). At the time the contract was made between Hiatt and IKON, IKON chose to use its wholly-owned captive finance subsidiary as the conduit for dollars, while bearing responsibility for the maintenance of both the copier leased to Hiatt by IKON's wholly-owned captive finance subsidiary and Hiatt's own copiers.[4] To enable IKON to limit Hiatt's remedy to direct damages would be to enable IKON to escape the lion's share of responsibility for its breach.

Hiatt's Brief at 4-5. This argument gives the Court no basis for a determination that the exclusion of consequential damages is unenforceable in this case. Hiatt recognizes that "[u]nconscionability is a question of law determined on the basis of circumstances existing at the time the contract was made"; however, Hiatt fails to discuss those circumstances or explain why they support its unenforceability argument. Hiatt's assertion that limiting Hiatt's remedy to direct damages "would enable IKON to escape the lion's share of responsibility for its breach" is essentially an argument that such limitations are per se unconscionable, which, as Hiatt recognizes, is not the case in Indiana. Accordingly, IKON's motion is granted as to Hiatt's claim for consequential damages.

In Count II of its third amended complaint, Hiatt asserts a claim under the Indiana Trade Secrets Act, Ind. Code 24-2-3-1 et seq. Essentially Hiatt alleges that IKON, under the guise of maintaining Hiatt's copy machines, obtained information regarding the copy volume of one of Hiatt's major customers, Ball Memorial Hospital ("the Hospital"), and then used that information to steal the Hospital's business from Hiatt. In support of this allegation, Hiatt points out that both Hiatt and IKON had done business with the Hospital for years, but IKON entered into a facilities management agreement with the Hospital within a year of obtaining access to

---

[4]The relevance of this assertion is unclear; however, the Court notes that the Equipment Agreement also excludes consequential damages. *See* Equipment Agreement ¶ 7 ("[I]n no event shall we be liable to you for any indirect, special or consequential damages.").

Hiatt's customer data, timing that it finds very suspicious.  Also suspicious in Hiatt's opinion is the fact that it found a blank sales lead form among a service log book kept by IKON regarding its work on Hiatt's copiers.[5]  Based upon these facts, Hiatt argues, it is reasonable to infer that IKON obtained information during the course of its maintenance work for Hiatt that it used to prepare its facilities management proposal to the Hospital–a proposal that ultimately was accepted and led to Hiatt losing the Hospital's business.

The Court will assume, without deciding, that Hiatt is correct that such an inference would be reasonable.  Unfortunately for Hiatt, however, that is not sufficient to show that IKON violated the Trade Secrets Act, because Hiatt has failed to produce any evidence that the information it believes IKON misappropriated constitutes a trade secret under the Act.  A trade secret is defined as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> > (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind. Code 24-2-3-2.  Hiatt has not presented any evidence from which the Court could determine that the Hospital's copy volume information satisfies this definition.  What economic value did the information have to Hiatt's competitors?  What efforts did Hiatt use to maintain its secrecy?

---

[5]IKON argues in its Reply Brief that the lead sheet and Hiatt's affidavit testimony regarding it are inadmissible and should be stricken for a variety of reasons.  The Court need not, and does not, consider those arguments.

Was it readily accessible to Hiatt's competitors by proper means?  Hiatt has submitted no evidence at all to aid the Court in answering any of these questions.  On the other hand,  IKON has submitted evidence, in the form of the affidavit of Trent Moss, that supports its assertion that the information was given to IKON by the Hospital after the Hospital approached IKON about providing on-site copying services at the Hospital.  This constitutes (uncontroverted) evidence that the information was not only "readily ascertainable by proper means," but that it actually was obtained by IKON by proper means.  "[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing they exist," *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 920 (Ind. 1993), and Hiatt has wholly failed to satisfy that burden in response to IKON's summary judgment motion.  Accordingly, that motion is granted as to Hiatt's claim under the Indiana Trade Secrets Act.

In Count III, Hiatt alleges that "IKON tortiously interfered with Hiatt's business relationship with its customer."  In its brief, Hiatt explains that it asserts that "IKON used Hiatt's confidential information to elevate the extent of IKON"s relationship with a customer to another level."  Hiatt does not provide any further explanation or analysis regarding its tortious interference claim and does not submit any evidence to support it or even attempt to demonstrate that the alleged actions of IKON satisfy the elements of a claim for tortious interference.  Accordingly, IKON is entitled to summary judgment on that claim.

Finally, Hiatt fails to respond at all to IKON's motion with regard to Count IV (unjust enrichment) and Count V (fraud).  Therefore, IKON also is entitled to summary judgment on those claims as well.

## Conclusion

IKON's motion for summary judgment is **DENIED** as to Hiatt's claim for breach of the Maintenance Agreement, inasmuch as there is a genuine issue of fact regarding what payments were made by Hiatt for the services that were to be provided under that agreement and whether those services actually were provided. IKON's motion is **GRANTED** as to the remainder of Hiatt's claims.

SO ORDERED: 09/10/2007

_/s/ William T. Lawrence_

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to:

Jason R. Delk
ICE MILLER LLP
jason.delk@icemiller.com

Bruce Noel Munson
bnmunson@aol.com

Katherine A. Winchester
ICE MILLER LLP
winchest@icemiller.com